IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SENETTA JONES, | § | |
| Plaintiff, | § § § | |
| v. | § § | 2:08-CV-0099 |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | § § § § § | |
| Defendant. | § § | |

# REPORT AND RECOMMENDATION
# TO REVERSE THE COMMISSIONER'S DECISION
# AND REMAND FOR FURTHER ADMINISTRATIVE ACTION

Plaintiff SENETTA JONES brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits. Both parties have filed briefs and supplemental briefs in this cause. The undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case be REMANDED for proceedings consistent with this report and recommendation.

## I.
## PROCEEDINGS

On April 6, 2005, plaintiff filed an application for social security insurance (SSI) alleging she was disabled and that such disability began on April 1, 2003 (a date she later amended to April 6, 2005). The Commissioner denied benefits initially and upon reconsideration. (Transcript

[hereinafter "Tr."], pgs. 45, 51). After a hearing, an Administrative Law Judge (ALJ) again denied plaintiff SSI benefits. (Tr. 10). The Appeals Council affirmed the ALJ's decision (Tr. 3), and this lawsuit against the Commissioner followed.

At the time of the hearing before the ALJ, on December 10, 2007, plaintiff was fifty-seven years old with a seventh grade education. (Tr. 15). She was previously employed as a home health aide. (Tr. 82, 321). At the hearing, plaintiff testified she suffers from back and knee pain. (Tr. 324). As a result of these infirmities, plaintiff alleged she has difficulty walking, standing, bending, and lifting. (Tr. 324-25, 328, 331). According to plaintiff, she spends her days slowly performing household chores (which requires several breaks of sitting down), grocery shopping, visiting friends, and attending church. (Tr. 80, 328-31). She testified she can stand upright for five to ten minutes before her back begins hurting and can stand for twenty minutes before her knees start throbbing. (Tr. 324, 327). Plaintiff testified she had great difficulty lifting a thirty-pound bag of potatoes at the grocery store; she has difficulty lifting twenty-five pounds; and is unable to carry twenty pounds frequently but could lift ten pounds frequently. (Tr. 328-30). Plaintiff testified pain pills provide some, but never total, relief from the pain; water aerobics and massage provide momentary relief. (Tr. 326-27).

Regarding her alleged disabilities, the ALJ agreed Ms. Jones suffers from the severe impairments of low back pain, bilateral knee pain, degenerative disc disease, degenerative joint disease, osteoarthritis, and hypertension. (Tr. 12). In spite of these impairments, the ALJ determined:

1. Ms. Jones "has the residual functional capacity to perform medium work that includes no climbing ropes, ladders, or scaffolds." (Tr. 12).

2. Ms. Jones is able to perform her past relevant work of a home health aide. (Tr. 15).

3.    In the alternative, Ms. Jones is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 16).

The ALJ stated "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms"; however, he found plaintiff's allegations concerning the "intensity, persistence and limiting effects" of her impairments "not entirely credible." (Tr. 13).

II.
ISSUES PRESENTED

Plaintiff appeals the affirmation of the ALJ's decision, detailed above, alleging:

1.    The Commissioner erred in determining Ms. Jones could perform work at the "medium" exertional level.

2.    The Commissioner erred in determining Ms. Jones could return to her past relevant work.

3.    The Commissioner erred in failing to properly determine whether [Ms. Jones] was capable of maintaining, as well as obtaining, employment before making his finding of "not disabled."

(*Plaintiff's Brief in Support of Claim for Social Security Benefits*, document #14, filed March 16, 2009, pg. 7). Because the Court recommends remand based upon the first two issues presented, there is no discussion of plaintiff's third issue.

III.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, the federal court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether

substantial evidence of disability exists, a reviewing court must weigh four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ could have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

## IV.
## MERITS

### A. Substantial Evidence Does Not Support the ALJ's Decision

Plaintiff contends in her first and second grounds of error that the Commissioner erred in determining she could perform medium-level work, including the medium-level work of her previous career as a home health aide. The commissioner responds the substantial evidence supports the ALJ's decision, and argues the ALJ's determination that plaintiff could return to her past work was proper.

Of the four elements to be weighed in determining whether substantial evidence of disability exists, consideration of the ALJ's own opinion as a factor is conspicuously absent. *See Wren*, 925 F.2d at 126. Indeed, the Fifth Circuit has held that the ALJ must derive his or her conclusions regarding an applicant's residual functional capacity from medical experts. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "[A]n ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, No. 08-30820, 2009 WL 4716027 at *3 n. 6 (5th Cir. 2009) (citing *Ripley*, 67 F.3d at 557).

In this case, the ALJ determined Ms. Jones has the residual functional capacity to perform medium-level work that does not require climbing ropes, ladders, or scaffolds. (Tr. 12). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

1. Plaintiff's Testimony Before the ALJ Regarding Her Weight-Lifting Abilities

Plaintiff testified she could lift grocery bags weighing approximately ten pounds each out of her car. (Tr. 328). At the grocery store, she was unable to pick up at thirty pound bag of potatoes. (Tr. 328). The bag of potatoes was on the floor, so she slid it over to her cart and put it on the bottom rack of the cart. (Tr. 330). Plaintiff testified that after loading the bag onto the cart, her back and right knee hurt. (Tr. 331). Plaintiff stated,

> I didn't really try to pick it [the potatoes] up because I knew I couldn't hardly do it. And just like if go [sic] and try to get a five-gallon jug of water, I'm not going to hardly do that because I always carry someone with me when I get a five-gallon jug of water, because I know I can't do it. My shoulders won't let me do it, and my back sure won't do it.

(Tr. 330).

2. The Medical Evidence of Record

The Court has reviewed the administrative record in this case. While plaintiff's medical records contain a variety of data on plaintiff's various medical ailments, the Court has been unable to locate a single piece of evidence, apart from plaintiff's testimony at the ALJ hearing, indicating the limits of plaintiff's weight-lifting abilities. No physician ever gave any opinion of plaintiff's lifting abilities, no physical therapist ever noted any weight-lifting goals or capabilities, no nurse ever noted the extent of any lifting limitations.

The ALJ did rely in part on the opinion of a medical consultant who reviewed plaintiff's medical records, but who apparently never directly interacted with Ms. Jones. (Tr. 14). The consultant completed a form entitled "Physical Residual Functional Capacity Assessment." In "item 1" of the "Exertional Limitations" section of the form, the consultant indicated Ms. Jones could occasionally lift fifty pounds. (Tr. 146). In "item 2," the consultant indicated she could lift twenty-five pounds frequently. (Tr. 146). "Item 6" of the section directed the person filling out the form to "[e]xplain how and why the evidence supports your conclusions in item 1 through 5. Cite the specific facts upon which your conclusions are based." (Tr. 146). The consultant did not provide the information requested but instead left this field blank. (Tr. 146).

3. The ALJ's Determination

Even though the ALJ found plaintiff's testimony to not be credible,[1] there is a total absence of any objective medical evidence specifically contradicting plaintiff's representations regarding her

---

[1] The ALJ based this determination on his observation that plaintiff's testimony concerning her ability to sit and stand for long periods of time was contradicted by her earlier statements of her daily activities. (Tr. 14-15).

weight-lifting abilities.² *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) ("a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence"); *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988) (relying upon medical records contradicting the claimant's testimony). In other words, there was a "conspicuous absence of credible choices" provided by the record and upon which the ALJ could rely. *See Hames v. Jeckler*, 707 F.2d 162, 166 (5th Cir. 1983).

Regarding the medical evidence, were there any evidence in the record supporting the consultant's conclusions, the ALJ may have properly relied upon them. *See Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir. 1991) (quoting *Villa v. Sullivan*, 895 F.2d at 1024 ("an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician"). There is nothing, however, indicating the medical consultant had records beyond what the Court currently has before it. And the medical records before this Court contain no support for a conclusion plaintiff was able to lift twenty-five pounds frequently and fifty pounds occasionally. The ALJ's reliance on the consultant's conclusions was error. *See id.*

4. Defendant has Failed to Justify the ALJ's Determination

After reviewing the medical records and noting the lack of any evidence supporting the ALJ's determination, the Court issued a briefing order directing the Commissioner to specifically identify the evidence of record that Ms. Jones met the physical exertion requirements of medium-level work. (*Briefing Order*, document #16, entered Dec. 21, 2009). Defendant responded:

---

² Indeed, it appears from the medical records that no physician was ever confronted with the issue.

> The Court asked Defendant to point out if any report by a doctor, nurse, or physical therapist who directly interacted with Jones indicated that Jones is able to frequently lift or carry objects weighing 25 pounds and lift up to 50 pounds. Defendant notes that no such statement by a medical source exists in the record.

(*Defendant's Supplemental Brief*, document #17, filed Jan. 15, 2010, pgs. 8-9 (internal citation omitted)). Defendant contends, however, that such evidence need not exist because the record, as it stands, is sufficient to support the ALJ's determination. Defendant highlights medical documents in the record indicating plaintiff's condition appeared to not be severe or was mitigated by treatment. Plaintiff, on the other hand, has likewise pointed to medical documents in the record indicating her medical ailments are substantial, severe, and not alleviated by treatment.

The issue brought by plaintiff, however, is not about whether she has severe medical problems—the ALJ has already determined that she does. (Tr. 12). It is not about how far plaintiff can walk, how long a doctor once recommended she exercise, or how severe her pain is. It is also not about whether plaintiff's lifestyle was "consistent with that of one who was experiencing constant and unremitting pain." (*Defendant's Supplemental Brief*, document #17, filed Jan. 15, 2010, pg. 7). Plaintiff has never claimed to have pain to the degree to be wholly unable to exercise or perform daily household chores or to be bedridden. Plaintiff's claim is simply that she cannot lift fifty pounds occasionally or twenty-five pounds frequently and that the ALJ's determination she could do so had no basis in medical fact or opinion. On that claim, there is no debate. There is nothing in the medical evidence of record specifically discussing (or even vaguely alluding to) plaintiff's ability to meet the weight-lifting requirements of medium-level work.

In further defense of the ALJ's determination, the Commissioner argues "the failure of . . . medical evidence to suggest any limitations on Jones' activities [and] the failure of any medical professional to limit Jones' activities" support the ALJ's determination. Defendant cites *Vaughan*

*v. Shalala*, 58 F.3d 129 (5th Cir. 1995) and *Harper v. Sullivan*, 887 F.2d 92 (5th Cir. 1989). In these two cases, the Fifth Circuit held the failure of the claimants' physicians to pronounce the claimants disabled or advise the claimants to limit daily activities was *one* factor indicating the ALJ's adverse decision was supported by substantial evidence. *Vaughan*, 58 F.3d at 131; *Harper*, 887 F.2d at 96-97. In both of these cases, however, there was *additional evidence* indicating a disability did not exist.³ These cases establish the failure of a physician to opine that his or her patient is disabled or should limit daily activities is one factor to consider when determining the existence of substantial evidence. The absence of physician-imposed limitations in addition to other evidence indicating a claimant's conditions are not disabling can provide a basis for an adverse finding. *See Vaughn*, 58 F.3d at 131; *Harper*, 887 F.2d at 97.

In this case, defendant Commissioner avers that because no physician ever affirmatively limited plaintiff's weight-lifting activities, no limits were necessary. This argument would be viable, however, only if the Commissioner could demonstrate one of plaintiff's doctors was ever given a reason to limit her weight-lifting activities. Plaintiff stopped working in 1993. (Tr. 319). The earliest medical records before the ALJ were from doctors plaintiff saw in 2004. If plaintiff was unemployed at the time she saw a doctor, then it is unlikely the doctor would feel it necessary to impose weight-lifting limitations, particularly if plaintiff had already self imposed such limitations.

Even were this Court to take into consideration the lack of a physician spontaneously imposing weight-lifting limitations, the fact remains that the Commissioner has pointed to no *additional* evidence upon which the ALJ could have relied to reasonably conclude that a fifty-five

---

³ In *Vaughan*, the plaintiff worked for several years while suffering from the ailments she claimed were disabling. 58 F.3d at 131. In *Harper*, two of the claimant's physicians could not find anything medically wrong with the claimant to explain his complaints. 887 F.2d at 97.

year old woman suffering from low back pain, bilateral knee pain, degenerative disk disease, degenerative joint disease, osteoarthritis, and hypertension was physically capable of lifting fifty pounds occasionally and twenty-five pounds frequently. Without any additional evidence indicating a disability did not exist, the lack of a physician-imposed limitation alone was an insufficient basis for concluding a disability did not exist. *See Vaught*, 58 F.3d at 131; *Harper*, 887 F.2d at 97.

In sum, plaintiff never made any statement to a medical professional regarding her weight-lifting abilities. The only evidence on the record touching the issue is plaintiff's testimony at the hearing before the ALJ that she was unable to lift more than thirty pounds. (Tr. 328-29). There is *no* evidence supporting the ALJ's conclusion that Ms. Jones can lift fifty pounds occasionally and twenty-five pounds frequently. Plaintiff's failure to present medical evidence affirming her testimony about her weight-lifting abilities does not excuse the Commissioner from meeting his burden of making a determination based upon evidence in the record. *See Anderson*, 887 F.2d at 633. Because there is no substantial evidence supporting the ALJ's determination, that determination should be reversed.[4] *See id.*

### B. If Plaintiff is Unable to Work at the Medium exertional Level, She Must be Found to be Disabled

The ALJ determined, in the alternative, that plaintiff could work in professions other than her previous profession. (Tr. 16). The ALJ based this determination on the statement of the vocational expert who testified at the hearing. At the hearing, the ALJ gave the vocational expert the following hypothetical: "I want you to assume that the individual is limited to medium level

---

[4] Moreover, plaintiff's past relevant work was as a home health aide, a job classified as a medium-exertional, semi-skilled job, with non-transferrable skills. (Tr. 340, 344). Because there was no evidence supporting the ALJ's determination plaintiff is able to work a medium-level job, there is likewise no basis for his determination plaintiff could work in her previous profession.

work. I want you to further assume that the individual is never to use any ladders, ropes, or scaffolds in performing their job." (Tr. 343). The vocational expert testified such a hypothetical person could (apart from the work of a home health aide) perform the work of a home health companion (light-level, semi-skilled), dining room attendant (medium-level, unskilled), and small products assembler (light-level, unskilled). (Tr. 344-45).

The determination plaintiff could perform other jobs in the national economy apart from that of home health aide is infirm because it was based on an unsupported hypothetical, i.e. a hypothetical of a person capable of performing medium-level work. For the reasons discussed above, the vocational expert's testimony that such a hypothetical person could perform other medium-level jobs was inapplicable to plaintiff.

Moreover, to the extent the vocational expert's testimony concerned light-level jobs, such testimony is inapplicable to Ms. Jones under Rules 202.02 and 201.02 of the Medical-Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 201.02, 202.02. Under those rules, if the applicant is of an advanced age, has a limited education, and has previous work experience of a skilled or semiskilled job with non-transferable skills, that person must be classified as disabled if he or she has a maximum sustained work capability limited to light or sedentary work. *Id.*

At the time she filed for disability benefits, Ms. Jones was fifty-five years old (Tr. 15) and was therefore of an advanced age. *See* 20 C.F.R. § 404.1563(e). She had completed up to the seventh grade and thus had a limited education. *See id.* § 404.1564(b)(3). According to the vocational expert at the hearing before the ALJ, plaintiff's previous profession was semi-skilled with those skills being non-transferrable. (Tr. 340, 344).

Because plaintiff meets all the requirements of Rules 201.02 and 202.02, if, on remand, the

Commissioner finds plaintiff limited to light- or sedentary-level work, he must automatically classify her as disabled. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rules 201.02, 202.02. In his response to the Court's December 2009 briefing order, defendant "acknowledge[d] that a finding that Jones' RFC was lower than medium would result in a directed verdict of 'disabled'" (*Defendant's Supplemental Brief*, document #17, filed Jan. 15, 2010, pg. 12).

According to defendant, in that instance, the only question would be when the period of disability began. And the answer to that question depends on whether Ms. Jones would be classified as capable of performing light- or sedentary-level work. (*Defendant's Supplemental Brief*, document #17, filed Jan. 15, 2010, pg. 13). There is no doubt, however, that anything less than a finding (based on medical evidence of record) that plaintiff is capable of performing medium-level work requires automatically holding plaintiff disabled.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff SENETTA JONES not disabled and not entitled to disability benefits be REVERSED and the case be REMANDED for further proceedings consistent with this Report and Recommendation. If, upon remand, the defendant Commissioner elects to revisit the weight-lifting capabilities of plaintiff, this determination should be based on a report completed by a medical professional who has directly interacted with and examined plaintiff.

# VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of October, 2010.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).